UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LISA A. FAZZOLARI and JAMES FAZZOLARI,          **DECISION AND ORDER**

                Plaintiffs,                          09-CV-0186(M)

v.

LINDSEY L. WALTERS and JEROME W. WALTERS,

                Defendants.
_____

In accordance with 28 U.S.C. §636(c), the parties have consented to jurisdiction by a United States Magistrate Judge [9].[1] Before me is defendants' motion for summary judgment [17]. For the following reasons, I order that the motion be granted in part and denied in part.

## BACKGROUND

This action arises from a June 6, 2006 motor vehicle accident in which a Lincoln Navigator operated by plaintiff Lisa Fazzolari was struck by a Dodge Neon operated by defendant Lindsey Walters, as both parties were backing out of their respective parking spaces at the Tops grocery store in Hamburg, New York. Defendants' Statement of Undisputed Facts [17-2], ¶1; Defendants' Memorandum [17-3], Ex. I. Plaintiff Lisa Fazzolari alleges that she sustained injuries to her neck, back, head and shoulders as a result of the accident. Defendants' Memorandum of Law [17-3], Ex. C, ¶6.[2]

---

[1] Bracketed references are to the CM/ECF docket entries.

[2] Plaintiff James Fazzolari, Lisa's husband, asserts derivative claims. Complaint [1-3], Third Cause of Action.

On September 26, 2008, plaintiffs commenced this action in state court and the action was subsequently removed to this court. Notice of Removal [1-1], ¶¶1, 5. Following completion of discovery, defendants moved for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56, arguing that plaintiff did not suffer a "serious injury" (as defined in New York Insurance Law §5102); proximately caused by the June 6, 2006 accident. Defendants' Memorandum [17-3], p. 3.

**A.      The Parties' Submissions**

   **1.      Plaintiff's Previous Treatment**

Plaintiff had received treatment for back pain and headaches prior to the accident. She received treatment from chiropractor Scott Croce. D.C., following a 1996 motor vehicle accident. Defendants' Statement of Undisputed Facts [17-2], ¶8.[3] In April 2001, plaintiff began suffering from headaches and was diagnosed with sinusitis. Id., ¶5. On October 29, 2001, plaintiff's primary physician, Maria Matala-Sullivan D.O. (Lakeshore Primary Care Associates) diagnosed her with an "acute thoracic back sprain with spasm". Id., ¶5; Defendants' Memorandum [17-3], Ex. Q, p. 69.[4]

Dr. Sullivan noted that plaintiff had a history of lumbar back pain, but was complaining of thoracic back pain after lifting heavy objects. Id., p. 68. In February and April 2002, plaintiff complained to Dr. Sullivan about her headaches. Id., pp. 63, 65. In January 2006,

---

[3]     Unless otherwise noted, these facts are adopted by plaintiffs in their Statement of Disputed Material Facts [23-3].

[4]     Because the medical records are not Bates numbered, I have used the CM/ECF numbering.

plaintiff was referred to the Dent Neurologic Institute for treatment. Defendants' Statement of Undisputed Facts [17-2], ¶6; Defendants' Memorandum [17-3], Ex. J., p. 3. At the time she was having cervical spasms. Id. In February 2006, plaintiff began chiropractic treatment with James Dragonette, D.C., for headaches and back pain. Defendants' Statement of Undisputed Facts [17-2], ¶8; Defendants' Memorandum [17-3], Ex. N., p. 13. Plaintiff testified that her neck was stiff on the day of the accident. Defendants' Memorandum [17-3], Ex. D, p. 29.

### 2. Plaintiff's Treatment Following the Accident

Plaintiff testified that her level of pain changed "a hundred percent" after the accident. Defendants' Memorandum [17-3], Ex. D, p. 80. Although plaintiff refused treatment at the scene of the accident, the following day plaintiff sought treatment at Lake Shore Hospital, where she was diagnosed with a "cervical/thoracic strain". Defendants' Statement of Undisputed Facts [17-2], ¶4; Defendants' Memorandum [17-3], Ex. K, p. 1. A CT scan of plaintiff's cervical spine taken on June 7, 2006 was "unremarkable", and there was "no evidence for fracture or subluxation" Id., Ex. K, p. 7. Plaintiff did not recall the hospital placing any restrictions upon her release. Id., Ex. D, p. 41.

#### a. Dr. Sullivan

On July 10, 2006, plaintiff was seen by Dr. Sullivan, who again diagnosed her with a "neck and back strain", and referred her to Dr. Dragonette for evaluation and massage therapy. Defendants' Statement of Undisputed Facts [17-2], ¶5; Defendants' Memorandum [17-3], Ex. Q, p. 26. At that time, Dr. Sullivan noted that plaintiff had "significant limited ROM as

far as flexion at about 5 degrees, extension is about 10 degrees, rotation is terrible at 5 degrees in the L and R positions. Muscle strength is slightly diminished on the L. She has paresthesias in her hand. Muscle strength is 4/5. Reflexes were intact". Id. On August 17, 2006, Dr. Sullivan noted that plaintiff had "increased ROM of her neck and back. However she has paraspinal muscle aches and pains". Id., p. 25.

### b. Dr. Dragonette

Dr. Dragonette states that as a result of the accident, plaintiff "suffered traumatically induced structural changes in the cervical and lumbar spine". Dragonette Affidavit [24], ¶5. Specifically, plaintiff has "suffered a significant loss of range of motion and pain secondary to a disc herniation at C6-7 and lumbar myofascial strain". Id., ¶6. Initial testing following the motor vehicle accident demonstrated a "significant decrease" in the range of motion of plaintiff's cervical and lumbar spines. Id., ¶7. Dr. Dragonette concluded that as a result of these injuries, plaintiff is "significantly limited in her ability to perform a substantial amount of her normal and regular daily activities", and that her limited range of motion "has adversely affected her ability to lift, walk, move, sit, and participate in the daily activities of her life". Id., ¶¶9-10. On July 23, 2007, he advised plaintiff that her injury was permanent. Plaintiffs' Memorandum [23-2], Ex. H, pp. 46-47.

### c. John Pollina, M.D.

Plaintiff treated with Dr. Pollina from October 23, 2006 through November 2, 2007. Pollina Affirmation [23], ¶2. On October 23, 2006, Dr. Pollina found her September 27,

2006 lumbar MRI to be "essentially normal", and "agreed with the report in regards to her cervical MRI". Defendants' Statement of Undisputed Facts [17-2], ¶9; Defendants' Memorandum [17-3], Ex. G, p. 10. At that time, he diagnosed her with cervical radiculopathy, neck pain and lumbar strain. Plaintiffs' Memorandum [23-2], Ex. L, p. 2. She had "about a 40% loss of cervical spine range of motion". Id.

On December 18, 2006, plaintiff continued to have pain with cervical spine range of motion and had "mild decreased pinprick in the left hand". Id., p. 5. Plaintiff was diagnosed with a cervical disk herniation. Id., p. 6. On October 29, 2007, the "range of motion of her neck was limited in all directions by about 30% due to the pain in her neck". Id., p. 8. Objectively, Dr. Pollina noted that "straight leg raise was positive on the left at about 45; negative on the right. There were no cords, fasciculations, atrophy, edema, lymphadenopathy, clonus or myelopathic findings". Id. Dr. Pollina indicated that plaintiff had not seen any improvements with chiropractic treatments and diagnosed her with cervalgia, cervical radiculopathy, low back pain and lumbar radiculopathy. Id.

### d. Dent Neurological Institute

Plaintiff resumed treatment with Peter Kovacs, M.D. of the Dent Neurological Institute. Defendants' Statement of Undisputed Facts [17-2], ¶6. An August 23, 2006 neurological examination noted that plaintiff had "suffered [a] cervical and thoracic sprain", but the examination was "unremarkable other than the cervical discomfort". Defendants' Memorandum [17-3], Ex. J, pp. 1 and 2.

e.  **Electronic Imaging**

A September 27, 2006 MRI performed by radiologist Frank Starvaggi, M.D. revealed that "disc level C6-7 shows a central annular tear with probable small left neural foraminal level disc herniation, however, there does not appear to be significant thecal sac or neural foraminal impingement at this level". Defendants' Statement of Undisputed Facts [17-2], ¶7; Defendants' Memorandum [17-3], Ex. L. He also conducted an MRI of plaintiff's lumbar spine, which revealed "mild degenerative disc disease at L5-S1 with disc bulging noted but no disc herniation, central canal or neural foraminal stenosis noted". Defendants' Memorandum [17-3], Ex. N, p. 3.

On December 3, 2007, plaintiff again underwent an MRI for her lumbar spine, which was normal, and an MRI of her cervical spine, which revealed "mild to moderate neural foraminal narrowing mainly at C6-7 left greater than right". Defendants' Statement of Undisputed Facts [17-2], ¶8; Defendants' Memorandum [17-3], Ex. N, pp. 126-127.

f.  **Defendants' IME**

On October 21, 2009, John J. Leddy, M.D. examined plaintiff. Leddy Affidavit [19], ¶2. Although Dr. Leddy diagnosed plaintiff with a cervical sprain as a result of the June 6, 2006 motor vehicle accident, he found that "several cervical MRIs documented objectively that her cervical sprain improved". Id., ¶10. Because of her "significant and well-documented history of prior similar complaints and, given the lack of objective evidence of new injury, her current symptoms are due to unrelated, pre-existing, intermittent, and chronic musculoskeletal

pain syndrome". Id., ¶11. Thus, he concluded that plaintiff's current symptoms are not causally related to the June 6, 2006 motor vehicle accident and that she did not suffer a serious injury. Id., ¶13.

### g. Plaintiff's Activities

Plaintiff was last employed in 1998. Defendants' Memorandum [17-3], Ex. D, p. 12. According to plaintiff, she had no previous difficulty doing laundry, vacuuming, cleaning the bathtub and toilets or cooking, but that in the 6 months following the accident, she was unable to perform any of theses activities. Defendants' Memorandum [17-3], Ex. D, pp. 69, 81-82.[5] According to plaintiff, Drs. Sullivan and Dragonette advised her not to do laundry, vacuum or clean the bathroom. Id., p. 69. Plaintiff's mother came to live with her to assist her with these activities. Id., p. 82. Her husband similarly testified that since the accident he does the cooking, cleaning, and yard work. Id., Ex. E, p. 99.

---

[5] Expanding upon plaintiff's self-described limitations as testified to at her deposition, she has submitted an affidavit in opposition to defendants' motion in which she states that her chronic neck and back pain "seriously affect[s] [her] in [her] ability to perform [her] daily activities including, but not limited to, walking and standing for extended periods of time, lifting heavy objects, participating in recreational activities and taking care of [her] home and family". Fazzolari Affidavit [23-23], ¶11. To the extent the affidavit contradicts plaintiff's deposition testimony, it will be disregarded. See Maxwell v. City of New York, 380 F.3d 106, 109 (2d Cir. 2004) ("a party's affidavit may not create an issue of fact by contradicting the affiant's previous deposition testimony").

## ANALYSIS

**A.     Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

**B.     The No-Fault Law**

Because this action is governed by New York State's "No-Fault Law" (N.Y. Ins. Law § 5101, *et seq.*), in order to prevail at trial, plaintiff must prove that she has sustained a "serious injury" (*see* N.Y. Insurance Law §5104(a)), which is defined as:

> "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment". N.Y. Insurance Law §5102(d).

Plaintiff alleges that due to "annular tears at C6-7, and herniations, bulges and protrusions at other levels" she suffered qualifying injuries under the following "serious injury" categories: (1) permanent consequential limitation of use of a body organ or member; (2) significant limitation of use of a body function or system; and (3) a medically determined injury or impairment which prevented her from performing her usual and customary daily activities for not less than 90 days during 180 days immediately following the incident. Plaintiffs' Memorandum [23-2], pp. 20-21.

C.  **Significant Limitation of Use**

Whether the limitation of use is significant "'involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part.'" Toure v. Avis Rent-A-Car Systems, Inc., 98 N.Y.2d 345, 353 (2002), rearg. denied, 98 N.Y.2d 728 (2002). A "minor, mild or slight" limitation does not constitute a serious injury. Licari v. Elliott, 57 N.Y.2d 230, 236 (1982). The "assessment of the 'significance' of a body limitation necessarily requires consideration not only of the extent or degree of the limitation, but of its duration as well". Partlow v. Meehan, 155 A.D.2d 647, 648 (2d Dep't 1989).

Defendants rely on Dr. Leddy's opinion, and argue that plaintiff's medical records "are completely devoid of any proof that quantitatively or qualitatively establishes the plaintiff's alleged limitations" and are unrelated to the subject accident. Defendants' Memorandum [17-3], p. 15. In contrast, plaintiffs rely on the MRI findings showing a C6-7 disc herniation, Dr.

Dragonette's objective testing and the measured limitation in plaintiff's movements. Plaintiffs' Memorandum [23-2], pp. 21-22.

I conclude that plaintiff has raised a triable issue of fact as to whether she sustained a significant limitation of use. The September 27, 2006 MRI revealed "a central annular tear with probable small left neural foraminal level disc herniation' in plaintiff's cervical spine. Defendants' Statement of Undisputed Facts [17-2], ¶7; Defendants' Memorandum [17-3], Ex. L. Plaintiff's limitations are supported by a variety of objective tests performed by Dr. Dragonette[6] on July 12, 2006, November 29, 2006 and July 23, 2007. Dragonette Affidavit [24], Ex. pp. 19, 28, 38. Plaintiffs' Memorandum [23-2], Ex. H, pp. 47-50.[7] Dr. Dragonette also noted that plaintiff's cervical MRI findings correlated with her symptoms. Plaintiffs' Memorandum [23-2], Ex. H, p. 62.

Plaintiff's limitations have also been quantitatively measured. For example, on July 12, 2006, plaintiff had a 60-78 percent limitation in her cervical range of motion, and by October 12, 2007 plaintiff's limitations had increased to 70-84 percent. Plaintiffs' Memorandum [23-2], pp. 9-10, 12; Dragonette Affidavit [24], ¶ 9, Ex., pp. 19 and 41. Dr. Dragonette also opines that "as a result of the motor vehicle accident of June 6, 2006, plaintiff . . . has suffered traumatically induced structural changes in the cervical and lumbar spine" and "a significant loss

---

[6] "Numerous courts in this circuit and around the country have traditionally permitted chiropractors to offer expert testimony of the type proffered here where the injuries at issue relate to a party's back or neck treatment." Hodder v. U.S., 328 F. Supp.2d 335, 346 (E.D.N.Y. 2004).

[7] Plaintiff tested positive on a variety of objective tests, including Yeoman's test, Soto Hall test, Valsalva's maneuver, Belt test, straight leg raise, Goldthwait's test, and Milgram's test. Plaintiffs' Memorandum [23-2], Ex. H, pp. 47-50.

of range of motion and pain secondary to a disc herniation at C6-7 and lumbar myofascial strain". Dragonette Affidavit [24], ¶¶5-6. *See* Plaintiffs' Memorandum [23-2], Ex. H, pp. 34-35.

Plaintiff's measured limitations confirmed by objective testing, together with the MRI demonstrating a cervical disc herniation, are sufficient to create a genuine issue of material fact. *See* <u>Champman v. Verspeeten Cartrage, Ltd.</u>, 2007 WL 776420, *4 (W.D.N.Y. 2007) (Skretny J.) (a 25% restriction in lumbar range of motion and 60% restriction in cervical range of motion supported by a MRI and discography/CT scan created a genuine issue of material fact); <u>Guito v. Prasad</u>, 2007 WL 57790, *3 (E.D.N.Y 2007) ("Decreased range of motion reports, together with the evidence of disc bulges", warranted denial of summary judgment); <u>Stein v. Bentor</u>, 2005 WL 2244831, *9 (E.D.N.Y. 2005) ("*Toure* . . . simply requires either an expert's 'designation of a numeric percentage of a plaintiff's loss of range of motion' *or* a qualitative assessment of a plaintiff's condition if supported by objective evidence and a comparison of plaintiff's limitations to normal functions" (emphasis added)). The fact that Dr. Dragonette's opinion contradicts Dr. Leddy's does not mean that it may be disregarded for purposes of this motion. *See* <u>Chase v. Allwai</u>, 2010 WL 1133333, *6 (W.D.N.Y. 2010) (Curtin, J.) ("not unexpectedly, Dr. Cappuccino's interpretation of the imaging reports is at odds with Dr. Lifeso's interpretation. However, this court's role at the summary judgment stage is to identify disputed issues of material fact, not to resolve them").

**D.     Permanent Consequential Limitation of Use**

In order for an injury to qualify as a "permanent consequential limitation of use of a body organ or member", it is necessary that "some degree of permanency and causation must be

demonstrated". Dwyer v. Tracey, 105 A.D.2d 476, 477 (3d Dep't 1984); *see* Altman v. Gassman, 202 A.D.2d 265, 265 (1st Dep't 1994) ("A permanent consequential limitation requires a greater degree of proof than a 'significant limitation', as only the former requires proof of permanency"). Furthermore, the claim must be based on objective medical evidence. *See* Gaddy v. Eyler, 79 N.Y.2d 955, 957 (1992).

Relying on the affidavit of Dr. Leddy, defendants argue that plaintiff has not sustained any permanent injuries or limitations as a result of the accident, and that plaintiff's current complaints are the result of unrelated and pre-existing chronic musculoskeletal pain syndrome. Defendants' Memorandum [17-3], pp. 13-14. In contrast to Dr. Leddy's opinion, Dr. Dragonette opines that plaintiff's injury is causally related to the accident and is permanent. Plaintiffs' Memorandum [23-2], Ex. H, pp. 34-35, 46-47. Even if Dr. Dragonette had not opined that the injury was permanent, the duration of plaintiff's limitations is sufficient to raise a triable issue of fact as to its permanency. *See* Ajnoha v. Demetrio-Mejia, 2005 WL 1330969, *3 (E.D.N.Y. 2005.) ("Although Dr. Bentsianov does not explicitly describe plaintiff[s]' injuries as permanent, his findings of continued limited range of motion three years after the accident are sufficient to support an inference of permanency").

Therefore, I conclude that plaintiff has raised a triable issue of fact as to whether she sustained a permanent consequential limitation of use.

E.      **90/180 Day Threshold**

To establish a "serious injury" under this standard, plaintiff must prove that she has been prevented from performing "substantially all" of the "material acts which constitute

[her] usual and customary daily activities" for "not less than ninety days of one hundred eighty days" following the accident. N.Y. Ins. Law §5102(d). Where a plaintiff cannot prove that "substantially all" of her daily activities are limited for a least ninety days - including the ability to perform her job - plaintiff fails to establish a serious injury. See Licari, 57 N.Y.2d at 238-39. Injuries that "fall within this category must be substantiated by objective medical proof; self-serving statements are insufficient to raise a triable issue of fact". Brusso v. Imbeault, __ F. Supp. 2d __, 2010 WL 1010447, *15 (W.D.N.Y. 2010) (Payson, M.J.).

Defendants argue that the objective evidence is insufficient to establish that plaintiff was unable to perform substantially all of her usual and customary daily activities for at least 90 of the 180 days after the accident. Defendants' Memorandum [17-3], p. 16.

It is undisputed that plaintiff was not working at the time of the accident. Defendants' Memorandum [17-3], Ex. D, p. 12. When plaintiff was discharged from the hospital the day after the accident, she does recall the hospital placing any restrictions on her activities. Id., Ex. D, p. 41. Although plaintiff testified that she was unable to cook, do laundry, vacuum or clean the bathroom in the 6 months following the accident, there is no other evidence in the record that plaintiff was unable to perform the other activities of daily living for at least 90 of the 180 days following the accident. Id., pp. 69, 81-82.

"A plaintiff's deposition testimony alone is insufficient to defeat a motion for summary judgment". Brusso, 2010 WL 1010447 at *15 ("Brusso has offered only her own deposition testimony describing that she no longer engages in certain household chores, such as vacuuming and laundry, and no longer enjoys bicycling or camping without pain. No evidence exists in the record establishing the frequency with which she engaged in those activities prior to

the accident or that those activities became more difficult during 90 of the first 180 days following the accident").

There is no objective medical evidence in the record demonstrating that plaintiff was restricted in performing substantially all of her usual and customary activities during at least 90 of the 180 days following the accident. The absence of such evidence is fatal to this claim. See Hyacinthe v. United States, 2009 WL 4016518, *12 (E.D.N.Y. 2009) ("plaintiff must establish that any 'restrictions were medically indicated', and any medical findings that support the 90/180 impairment must be 'based on objective medical findings'").

Therefore, I conclude that plaintiff has failed to raise a triable issue of fact as to whether she sustained a qualifying injury satisfying the 90/180 day threshold.[8]

## CONCLUSION

For these reasons, defendants' motion for summary judgment [17] is granted to the extent of dismissing plaintiffs' claim for serious injury under the "90/180 days" standard, but is otherwise denied.

**SO ORDERED.**

DATED: September 20, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

[8] In defendants' reply they argue that plaintiff must offer a reasonable explanation for her abrupt termination of her treatment with Drs. Dragonette and Pollina. Defendants' Reply Memorandum [28], p. 8. However, defendants cannot raise a new argument in their reply. See Precisionir Inc. v. Clepper, 693 F. Supp. 2d 286, 297 (S.D.N.Y. 2010) ("the Court will not consider new arguments in reply papers").

-14-